WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) No.  CR 05-826-TUC-CKJ(BPV) |
| vs. | ) |
| BOBBY GLENN SUTTON, JR., et al., | ) **ORDER** |
| Defendants. | ) |

        Pending before the Court are the Motions in Limine to Preclude Opinions of Guilt and Guilt-Assuming Characterizations [Doc. #s 155 and 161], the Motion in Limine to Preclude Admission of Purported Co-Conspirator Statement [Doc. #175], the Motion in Limine Re: Religious Comments [Doc. # 176], the Motion in Limine Re:  Claim that FBI Agent Goodman was Cleared by any Government Investigation [Doc. # 177], the Motion in Limine to Preclude Agent Clifford Goodman from Making any Reference to his Rough Notes [Doc. #186], and the Motion in Limine Regarding Evidence Related to Possible Character Defense [Doc. # 192].  Also pending before the Court is the issue of the use of co-conspirator statements at trial.  The Court has previously determined that it will defer ruling on this issue until trial. Oral argument was presented to the Court on March 13, 2007.

***Motion in Limine to Preclude Opinions of Guilt and Guilt-Assuming Characterizations [Doc. #s 155 and 161]***

        Sutton requests the government's witnesses be precluded from offering opinions as to

1   Defendants' guilt and be precluded from utilizing pejorative characterizations that assume
2   the guilt of Defendants.  Specifically, Sutton seeks to preclude opinion witnesses using terms
3   such as extortion, blackmail or shake down and from referring to Defendants' statements as
4   lies or false.  Similarly, Westfall requests the extortion testimony be precluded and also
5   requests that any reference to Goodman being assigned to the public corruption unit be
6   precluded.

7         The government asserts, however, that "testimony in the form of an opinion or
8   inference otherwise admissible is not objectionable because it embraces an ultimate issue to
9   be decided by the trier of fact."  Fed.R.Evid. 704(a).  Further, the government distinguishes
10  the cases relied upon by the defense as those involving secondhand expert testimony rather
11  than firsthand lay witness testimony.

12        Generally, lay opinion testimony is admissible if the opinions or inferences are
13  rationally based on the witness' perception, helpful to a clear understanding of the witness'
14  testimony or of a fact in issue, and not based on scientific, technical, or other specialized
15  knowledge.  Jones, Rosen, Wegner, & Jones, RUTTER GROUP PRACTICE GUIDE:
16  FEDERAL CIVIL TRIALS & EVIDENCE (The Rutter Group 2006), ¶ 8:1410.  However,
17  legal conclusions should be excluded.  *McHugh v. United Service Auto. Ass'n*, 164 F.3d 451,
18  454 (9th Cir. 1999).  But a witness may use legal terms when giving opinion testimony if it
19  is clear that the terms are being used in a nonlegal sense.  *United States v. Sheffey*, 57 F.3d
20  1419, 1426 (6th Cir. 1995).

21        This case is similar to *United States v. Dozier*, 672 F.2d 531 (5h Cir. 1982).  In
22  *Dozier*, the witnesses were permitted to characterize defendant's conduct as extortion,
23  blackmail or a shakedown.  However, the jury was instructed that the evidence was of the
24  witness' perceptions, not a conclusive legal opinion.  The court found that this evidence went
25  to the victim's fearful state of mind, which is crucial in proving extortion.  Similarly, the
26  Ninth Circuit has found that an extortion conviction requires the government to show that the
27  victim possessed a reasonable fear.  *United States v. Marsh*, 26 F.3d 1496 (9th Cir. 1994).
28  The Court finds that the witnesses may testify to their state of mind, including characterizing

1   Defendants' conduct in those words that they feel most appropriate.  However, counsel

2   should advise its witnesses to not make any legal conclusions in their testimony.  Counsel

3   may submit proposed jury instructions regarding the evidence as a witness' perceptions rather

4   than a conclusive legal opinion.

5          As to the characterization of Defendants' statements as lies or false, the Ninth Circuit

6   Court of Appeals has held that it is "error to permit a witness to testify over objection that

7   another witness's extra-judicial statements were truthful.  [Citation omitted.]  We cannot

8   discern any principled distinction between asking a law enforcement officer his opinion

9   regarding whether the defendant was untruthful during a police interview[.]"  *United States*

10  *v. Sanchez*, 176 F.3d 1214, 1221 (9th Cir. 1999).  Although an inquiry may be appropriate

11  in some circumstances, *Southern Union Co. v. Southwest Gas* Corp., 281 F.Supp.2d 1117,

12  1126 (D.Ariz. 2003), such a situation is not presented in this case.  Sutton's motion will be

13  granted as to any witness referring to any statement of Defendants' as lies or false.

14         As to the request that Goodman not testify that he was assigned to the public

15  corruption unit of the F.B.I., the government asserts that this background information serves

16  as an introduction of the witness to the jury and is admissible under Fed.R.Evid. 401.  Indeed,

17  the testimony will serve "the legitimate purpose of apprising the jury of [Goodman's]

18  qualifications for investigating [Defendants'] activities."  *United States v. Pojilenko*, 416 F.3d

19  243, 245 (3rd Cir. 2005), *quoting United States v. Vastola*, 899 F.2d 211, 242 n. 38 (3rd Cir.

20  1990).  The probative value of the testimony is not outweighed by the likelihood of unfair

21  prejudice to the Defendants.  Fed.R.Evid. 403.  The Court will deny Westfall's request.

22

23  ***Motion in Limine to Preclude Admission of Purported Co-Conspirator Statement* [Doc. #**

    **175]**

24

25         Sutton requests that Westfall's statement given to Goodman on April 9, 2002, not be

26  admitted against Sutton under the co-conspirator exception to the hearsay rule.  Sutton asserts

    that, by that time, any conspiracy had clearly ended.  "The hearsay-conspiracy exception

27  applies only to declarations made while the conspiracy charge was still in progress, a

28

1    limitation that this Court has 'scrupulously observed.'" *Anderson v . United States*, 417 U.S.

2    211, 218-19 (1974).  Sutton further asserts that the statement is not admissible because it

3    could not have furthered any purported conspiracy.  *United States v. Nazemian*, 948 F.2d

4    522, 829 (9th Cir. 1991).

5         The government[1] asserts that the statements are not being offered for the truth of the

6    matter asserted.  Rather, the statements have probative value independent of their veracity.

7    *United States v. Echeverry*, 759 F.2d 1451, 1457 (9th Cir. 1985) (upholding defendants'

8    statements to an undercover agent as non-hearsay for their background value).  The

9    government relies on *Anderson v. United States*, 417 U.S. 211 (1974), and its underlying

10   appeal, *United States v. Anderson*, 481 F.2d 685, 696 (4th Cir. 1973), for its assertion that

11   subsequent denials helped to provide the foundation for the conspiracy for which the

12   defendants were charged.

13        The government also asserts that the statements are independently admissible.  The

14   government asserts that neither Sutton nor Westfall renounced the conspiracy prior to the

15   statements to Goodman.  Moreover, the government argues that Fed.R.Evid. 801(d)(2)(E)

16   does not require that the statements be made to a member of the conspiracy.  In *United States*

17   *v. Zavala-Serra*, 853 F.2d 1512, 1516 (9th Cir. 1988), statements made to a government

18   informant were admissible.  However, that case dealt with an informant, not a known agent.

19   Another court has held that "oral statements made to known government agents by co-

20   conspirators would not be admissible under Rule 801(d)(2)(E) of the Federal Rules of

21   Evidence, because they would not have been made 'during the course and in furtherance of

22   the conspiracy.'" *United States v. Gallo*, 654 F.Supp. 463, 468-69 (E.D.N.Y. 1987), *quoting*

23   Fed.R.Evid. 801(d)(2)(E).

24        The parties disagree about whether the Court should defer ruling on this issue until

25   trial.   In order to permit counsel to be aware of parameters allowed during opening

26

27        [1]The government asserts that its argument also applies to Sutton's statement about

28   Westfall.

statements, the Court will make a preliminary ruling that the statements do not qualify as co-conspirator statements because no showing has been made that the conspiracy was still ongoing at the time of the statements to Goodman.  Counsel may ask the Court to reconsider this decision, however, if the evidence presented at trial establishes that the conspiracy was still in progress at the time of the statements.

However, the Court agrees with the government that the statements are not being offered for the truth of the matter asserted.  The Ninth Circuit Court of Appeals has recognized that statements not offered for the truth of the matter asserted are admissible against a co-conspirator.  *United States v. Fried*, 576 F.2d 787 (9th Cir. 1978) (exculpatory post-arrest statements by alleged co-conspirators admitted as obviously false to permit comparison by jury with other admissible, conflicting evidence); *see also United States v. Davis*, 154 F.3d 772 (8th Cir. 1998) (where propriety of investigation placed in issue, agent's testimony as to out-of-court statements of other witnesses was not hearsay but, rather offered to explain investigation).  The Court finds each Defendant's statements that are not being offered for the truth of the matter asserted are admissible against each other.

At the hearing, Sutton also asserted that confrontation issues may be presented.  In light of the Court's determination that the statements are admissible against each Defendant because the statements are not being offered for the truth of the matter asserted and in the absence of any written briefing by counsel, the Court anticipates no violation of the Confrontation Clause.  *See United States v. Shannon*, 137 F.3d 1112 (9th Cir. 1998).

***Motion in Limine Re:  Religious Comments* [Doc. # 176]**

Sutton requests that comments he made about the Mormon Church on February 21, 2002, in a recorded conversation be precluded.  He asserts that they have no probative value and inject  an unnecessary religious issue into the case; therefore, any probative value is outweighed by unfair prejudice pursuant to Fed.R.Evid. 403.  Sutton also asserts that the evidence should be precluded because Fed.R.Evid. 610 prohibits reference to religious beliefs or opinions as they relate to a witness' credibility.  The case cited by Sutton

confirming this general rule also states that  "[a] person's beliefs, superstitions, or affiliation with a religious group is properly admissible where probative of an issue in a criminal prosecution."  *United States v. Beasley*, 72 F.3d 1518 (11th Cir. 1996).

In its response, the government asserts that Sutton's statements to Weiss were designed to convey the message that Waste Management would pay a heavy political and economic price; i.e., powerful Mormons would destroy Waste Management in Arizona if Waste Management did not capitulate to Sutton and Westfall's extortion scheme.

Here, the reference to the Mormon church is probative of whether Sutton was threatening Waste Management with paying a heavy political and economic price.  This probative value is not outweighed by any unfair prejudice.  Fed.R.Evid. 403.  The motion will be denied.  The Court advises counsel that it will address this issue with prospective jurors in *voir dire* instead of in the questionnaire.

### Motion in Limine Re:  Claim that FBI Agent Goodman was Cleared by any Government Investigation [Doc. # 177]

Sutton asserts that the government should be precluded from introducing any testimony that Goodman was cleared in any investigation regarding the Godoy matter.  In his Reply, Sutton acknowledges that he has received the documents to permit effective cross-examination.  During argument on this motion, counsel for Sutton suggested the Court defer ruling on this issue until trial when it would be known whether the government would present any witnesses to rehabilitate Goodman pursuant to Fed.R.Evid. 608.  The Court will defer ruling on this issue until trial.

### Motion in Limine to Preclude Agent Clifford Goodman from Making any Reference to his Rough Notes [Doc. # 186]

Sutton requests that Goodman be precluded from referring to his rough notes because he cannot effectively cross-examine Goodman regarding them because the notes have not been produced.  The government asserts that Goodman took the notes as he was taught during training and used his proscribed procedure.  The government cites the reference to a

1  training manual in support of its assertion that Goodman can refer to his notes. *United States*

2  *v. Head*, 641 F.2d 174, 181 (4th Cir. 1981), *cert. denied*, 462 U.S. 1132 (1983).

3          The Court previously found that the notes involved in this case are not a written

4  statement adopted by a witness, *United States v. Boshell*, 952 F.2d 1101, 1105 (9th Cir.

5  1991), are not a substantially verbatim recitation recorded simultaneously to an oral

6  statement, and are not a grand jury transcription.  18 U.S.C. § 3500(e).  Moreover, counsel

7  for the government has asserted that the handwritten notes do not fall with the Jencks Act and

8  are not a statement of Agent Goodman.  *See United States v. Miller*, 771 F.2d 1219, 1232

9  (9th Cir. 1985) ("the unrefuted testimony of a note-taking government agent is adequate to

10 establish that materials are not statements within the Jencks Act because they were not

11 adopted by the witness nor were they a substantially verbatim transcription of the witness's

12 comments").  Further, the government has reviewed the handwritten notes for *Brady* material

13 and whether the notes are "statements" as outlined in the Jencks Act and Agent Goodman has

14 testified that he did not share his notes with Sutton or Westfall and that the notes were not

15 verbatim transcriptions of the Defendants' statements or other taped conversation.  The Court

16 denied Defendants' prior request for production of the notes.

17         However, papers or documents are discoverable if "(i) the item is material to preparing

18 the defense; (ii) the government intends to use the item in its case-in-chief; or (iii) the item

19 was obtained from or belongs to the defendant."  Fed.R.Crim.P. 16(a)(1)(E).  To show

20 materiality, a defendant must present "facts which would tend to show that the Government

21 is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d

22 1215, 1219 (9th Cir. 1990); *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995)

23 ("information helpful to the defense" is material).  In this case, the government has

24 previously presented testimony at the motion to suppress hearing that the use of the rough

25 notes supported the government's claim that the report of the non-recorded interview was

26 accurate.  The Court finds that review of the rough notes would be helpful to Defendants in

27 attempting to dispute this claim particularly where, as here, the Defendant are each charged

28 with making a false statement during the oral interview.

1    Moreover, the rough notes at issue in this case are not merely the notes regarding the

2    investigation.   Rather, the rough notes, which purport to summarize the statements of

3    Defendants and from which Goodman then completed his report, presumably provide the

4    information upon which some charges are based.  Sutton asserted during the hearing that the

5    rough notes were the best evidence of the charges.  Although the government asserts that this

6    case is no different from any other false statement federal case, *see* 18 U.S.C. § 1001

7    (knowingly and willfully making a false statement that is material to any matter within the

8    jurisdiction of a federal government department or agency is prohibited), such an assertion

9    does not present a reason why the apparent basis for the charges should not be disclosed to

10   Defendants.  Indeed, the government has not presented any § 1001 case in which the court

11   considered whether notes should be disclosed even when they apparently provided the basis

12   for the charge.  Further, although counsel for the government stated during the hearing that

13   Goodman began preparing his report the same day as the rough notes were made, the rough

14   notes were apparently made while the statements were being given.  Goodman's report was

15   the basis for the charges . . . however, the report was presumably not the result of merely

16   Agent Goodman's memory, but also the result of the contents of the notes.

17   The Court finds disclosure of the notes relating to the interviews to be appropriate and

18   will direct the government to disclose Goodman's notes to Defendant.  However, this Order

19   includes only disclosure of the handwritten notes relating to the interviews of the Defendants.

20   All other handwritten notes by agents need not be produced as previously ordered by the

21   Court.  Furthermore, any mental impressions, conclusions, opinions, or legal theories of the

22   agents included in the notes may be redacted.  The Court, therefore, will deny the request to

23   preclude Goodman from referring to his rough notes.

24

25   ***Motion in Limine Regarding Evidence Related to Possible Character Defense* [Doc. #192]**

26   Sutton asks the Court to preclude matters raised in newspaper articles that have been

27   disclosed by the government.  Alternatively, Sutton requests that the Court outline the

28   parameters of the evidence the government would be permitted to present pursuant to

1  Fed.R.Evid. 608 if Sutton were to present a character defense.  Specifically, Sutton requests
2  the government to specify which matters it intends to use, specify the manner in which these
3  matters will be presented to the jury, and identify and articulate the basis for admissibility.
4  Sutton asserts that information contained within newspaper articles disclosed by the
5  government (which Sutton speculates may be the basis for impeachment) are based on
6  unsubstantiated allegations, do not meet the requirements of Fed.R.Evid. 404(b), are often
7  based on anonymous sources, involve multiple layers of hearsay, raise collateral issues that
8  would be precluded by Fed.R.Evid. 403, and suffer from other evidentiary infirmities.

9      The government asserts that information contained within the articles are examples
10  that support the untruthfulness of Defendants and are appropriate areas of inquiry on cross-
11  examination pursuant to Fed.R.Evid. 404(a), 405(a), and 608(b).  The government also
12  asserts that the probative value of the evidence is not outweighed by any unfair prejudice.

13      The Court agrees that inquiry into specific instances of a character trait for
14  truthfulness or untruthfulness is appropriate.  Fed.R.Evid. 608.  Similarly, inquiry into other
15  relevant character traits is appropriate.  Fed.R.Evid. 404(a) and 405(a).  Defendant Sutton has
16  not provided any authority that requires the government to specify pre-trial which matters
17  will be used for impeachment.[2]  The Court does not find it appropriate, therefore, to direct
18  the government to specify which matters it will use for impeachment.

19      However, Defendant Sutton has also asserted that the use of the impeachment material
20  is inappropriate because it is based on unsubstantiated allegations and relies on anonymous
21  sources.  In order to ensure that a party is not unfairly prejudiced or harassed, a reasonable

22
23
24  [2]*See e.g.*, *United States v. Tomblin*, 46 F.3d 1369, 1388 n. 51 (5th Cir. 1995) ("[R]ule
608(b) does not require advance notice of the prosecutor's intent to use specific instances of
25  defendants' conduct to impeach the defendant when he testifies. *United States v. Baskes*, 649
F.2d 471, 477 (7th Cir. 1980) ("No rule or rationale guarantees the defense advance
26  knowledge of legitimate impeachment before it calls a witness."), *cert. denied*, 450 U.S.
27  1000, 101 S.Ct. 1706, 68 L.Ed.2d 201 (1981).").
28

1   good faith belief that the conduct in question actually occurred is required.  *See Michelson*

2   *v. United States*, 335 U.S. 469, 481, 69 S.Ct. 213, 221 (1948); *United States v. Sanchez*, 176

3   F.3d 1214 (9th Cir. 1999); *United States v. Zidell*, 323 F.3d 412 (6th Cir. 2003); *Hynes v.*

4   *Coughlin*, 79 F.3d 285 (2nd Cir. 1996).  Counsel have not provided the Court with any

5   authority to determine when there is an adequate basis for a good faith belief.  Although

6   some courts may be reluctant to weigh probative worth against prejudice until the trial

7   unfolds and proposed impeachment may be placed in context, 3 Federal Evidence § 265 (2d

8   ed. 2006), the Court will make preliminary rulings.

9        It seems obvious that "mere rumor, gossip or innuendo" is insufficient to provide a

10   good faith belief.  Jones, Rosen, Wegner & Jones, RUTTER GROUP PRACTICE GUIDE:

11   FEDERAL CIVIL TRIALS & EVIDENCE (The Rutter Group 2006) ¶ 12:24.  Moreover,

12   a prosecutorial hunch is not sufficient.  *United States v. DeGeratto*, 876 F.2d 576, 583 (7th

13   Cir. 1989).  At least one treatise has stated that a reasonable or good faith belief is a notion

14   very close to probable cause. 3 Federal Evidence § 265 (2d ed. 2006).  At least one court has

15   found that impeachment by newspaper articles may be appropriate if the articles attribute

16   statements to a trial witness.  *SeePallotta v. United States*, 404 F.2d 1035 (1st Cir. 1968).

17   However, that Court also stated that a separate article, that apparently did not attribute

18   statements to a trial witness, was clearly unusable for any purpose.

19        The Court finds that the information contained within the newspaper articles that rely

20   upon an anonymous source or do not attribute the information to a source does not present

21   a reasonable or good faith belief that the conduct occurred.  The government may not use

22   such information for impeachment without further information to establish a good faith

23   belief.  The Court finds that the information contained within the newspaper articles that

24   provide a source for the information provides a sufficient good faith basis for impeachment.

25        The Court finds that, if there is a reasonable or good faith belief that the conduct

26   occurred, the probative value of the information regarding untruthfulness is not outweighed

27   by any unfair prejudice. Fed.R.Evid. 403.  The Court will deny in part this motion.

28        During the hearing, counsel for the government indicated that if Westfall or character

witnesses testified as to Westfall's character trait for peacefulness, the government would seek to impeach the witness(es) with questions regarding a threat against a contractor. Counsel clarified that he believed overt testimony that Westfall is peaceful would warrant such impeachment.  Counsel for Westfall indicated at the hearing that he would not be presenting any character defense regarding truthfulness, lack of violence, good citizen, or good businessman.  Should such character evidence not be presented, impeachment regarding these issues is not appropriate.

The government also asserts that, if evidence that Westfall acted in the public interest is presented, impeachment regarding prior self-dealing is appropriate.  Westlfall asserts that the use of the government's surreptitiously recorded tapes of conversations that include statements by Westfall that "he brought the overweight load problem to the attention of Waste Management's Dave Hauser, because, in part, of his concern for safety issues" should not permit the government to inquire into Westfall's pursuit of contracts during the Sutton term of office.  Reply, p. 3.  In its motion, the government asserts that, while it does not seek to introduce evidence of such instances, inquiry into such issues is appropriate pursuant to Fed.R.Evid. 403 and 404.  The government, however, has not stated for what purpose, other than to show that Westfall acted in conformity therewith, such evidence is relevant.  *See* Fed.R.Evid. 404(b) (Although evidence of other acts is not admissible to prove the character of an individual to show he or she acted in conformity therewith, evidence of other acts may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]").

The Court finds the use of the recorded conversations does not permit inquiry by the government into the other acts of Westfall.  However, if either Westfall or other witnesses testify about Westfall acting in the interests of the community, counsel may then present argument whether inquiry into the other acts of self dealing is appropriate.

Accordingly, IT IS ORDERED:

1.      The Motions in Limine to Preclude Opinions of Guilt and Guilt-Assuming Characterizations [Doc. #s 155 and 161] are GRANTED to the extent they seek to preclude

witnesses from expressing their opinion that Defendants lied or provided false information.

      2.     The Motion in Limine to Preclude Admission of Purported Co-Conspirator Statement [Doc. #175] is GRANTED without prejudice.

      3.     The Motion in Limine Re: Religious Comments [Doc. # 176] is DENIED.

      4.     The Motion in Limine to Preclude Agent Clifford Goodman from Making any Reference to his Rough Notes [Doc. #186] is DENIED.  However, the government shall disclose Agent Goodman's notes of his interviews of Defendants to the defense within fourteen (14) days of this Order.

      5.     The Motion in Limine Regarding Evidence Related to Possible Character Defense [Doc. # 192] is GRANTED as to that information that relies on anonymous or unknown sources.  The Motion in Limine Regarding Evidence Related to Possible Character Defense [Doc. # 192] is DENIED as to information regarding untruthfulness where there is a reasonable or good faith belief the conduct occurred.

      DATED this 4th day of May, 2007.

_____
Cindy K. Jorgenson
United States District Judge

- 12 -